Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 23 2012, 9:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GREGG S. THEOBALD**
Lafayette, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF K.L., MINOR CHILD, and | ) ) ) ) ) |
| P.L. (FATHER), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 79A04-1110-JT-625 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Diana J. LaViolette, Senior Judge
Cause No. 79D03-1104-JT-36

**April 23, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

In this case, an incarcerated father, P.L. ("Father"), challenges a trial court's decision to terminate his parental relationship with his four-and-a-half-year-old daughter, whom he has never met and who is currently in pre-adoptive foster care with one of her siblings. Father's incarceration resulted from a class B felony conviction for neglect of a dependent causing a broken bone. He also suffers from mental illness and has attempted suicide more than once. During his incarceration, he has taken parenting and anger management classes and has sent small sums of money as child support for his daughter. Upon his release from prison, he faces five years of probation, subject to a condition that he not be alone with any child under age sixteen.

When the trial court terminated the parent-child relationship, it issued extensive findings of fact and conclusions thereon. Father now appeals the termination order, claiming that the evidence is insufficient to support the trial court's findings that continuation of the relationship poses a threat to his daughter's well-being, that there is a reasonable probability that the conditions that led to his daughter's removal will not be remedied, and that it is in his daughter's best interests to terminate his parental rights. Finding no error, we affirm.

**Facts and Procedural History**

K.L. was born on April 29, 2007, to Father and S.C. ("Mother"). At that time, Father was incarcerated pending trial on a charge of class B felony neglect of a dependent, stemming from an incident in which he broke a bone of his stepson, who was under age twelve. Father was convicted on September 7, 2007, and the trial court subsequently

2

sentenced him to fifteen years, with ten years executed and five years suspended to probation/community corrections. His probation terms prohibit him from being alone with any child under age sixteen.

In April 2010, the Tippecanoe County Department of Child Services ("DCS") received a report that Mother had left her children in a vehicle with the motor running, and that one of the children had driven the vehicle into a house. On April 28, 2010, K.L. was removed from Mother's care and placed in foster care. On April 30, 2010, DCS filed a petition alleging that K.L. was a child in need of services ("CHINS"). Mother contested the CHINS allegations, but Father, still incarcerated, did not challenge them. On May 25, 2010, the trial court found K.L. to be a CHINS. On June 17, 2010, the trial court ordered that Father participate in services available to him in prison through the Department of Correction ("DOC").

On April 26, 2011, DCS filed a petition to terminate both Mother's and Father's parental rights. Mother voluntarily relinquished her parental rights, and Father contested the termination petition. On October 6, 2011, the trial court issued an order terminating the parent-child relationship between Father and K.L. The order was accompanied by extensive findings of fact and conclusions thereon, which include the following:

> 7. On or about February 8, 2005, the Court in Cause No. 79D01-0312-FB-4 sentenced Father for two years to [sic] Battery by Bodily Waste.
>
> 8. On September 7, 2007, the Court in Cause No. 79D01-0702-FB-4 found that Father was guilty, but mentally ill, of the crime of Count 1, Neglect of a Defendant [sic], a Class B Felony. The Court found Father's mental illness as a mitigating factor, and it found among the

aggravating factors, that the offense was a non-suspendible offense and that the victim was under the age of twelve (12).

9. On September 7, 2007, the Court in Cause No. 79D01-0702-FB-4 sentenced Father to the [DOC] for a period of fifteen (15) years. The Court ordered the ten (10) years of that sentence as executed, and suspended five (5) years. As a condition of probation, the Court ordered Father to complete five (5) years at Tippecanoe County Community Corrections at a level to be determine[d] by them, in cooperation and consultation with the ACT Team through Wabash Valley Hospital. As another condition of probation, the Court ordered that Father was prohibited to be alone with any children under the age of sixteen (16) years of age.

10. Father has not made substantial progress toward resolving the problems that resulted in removal and/or the inability to place [K.L.] back into his care.

11. On the date of the termination hearing, the Court finds and Father testified that he will continue to be incarcerated until February 2012, and, after his release, he would go to an inpatient facility, for ninety (90) days.

12. On the date of the termination hearing, the Court finds and Father testified that he cannot care by himself for [K.L.] after his release unless he successfully obtained a modification of sentence by pursuing post-conviction relief.

13. Father has not yet initiated a petition for modification of sentence and agreed the petition for modification may not be granted. The Court finds and Father testified that he planned on pursuing that after his release.

14. The Court finds and Father testified that he hoped to be able to care for [K.L.] within six (6) to seven (7) months after his release from incarceration.

….

16. [K.L.] was about sixteen months old when DCS become [sic] involved in the case; at the time of the termination she was about four (4) years old.

4

17. Father has [had] no relationship with [K.L.] before or during DCS's involvement; in fact he has never met or seen her in person.

….

19. During [K.L.'s] entire life, Father provided no support.

20. The Court finds and Father admitted having other children, but he had not supported them financially and he does not know where they are.

21. During the CHINS proceedings, Father never obtained any employment.

22. The Court finds and Father testified that he had some experience working in construction, but he did not present any testimony as to whether he may have had a job lined up after his release from incarceration.

23. During the CHINS proceedings, Father never obtained any sustainable source of income.

24. Father does not have a secure home where he and [K.L.] can reside after his release; rather, the Court [f]inds and he testified that he may be able to live with his parents if they have room, or live in a mission home.

25. Father has not paid any support or reimbursement for the care of [K.L.] during the course of the CHINS.

26. On the date of the termination hearing, Father was still incarcerated, lacked any financial support and stable independent housing suitable for [K.L.], thus, he could not care for [K.L.].

27. On the date of the termination hearing, the Court finds and Father admitted having served time in jail for about four (4) years and six (6) months for neglect of a dependent.

28. At the termination hearing, the Court finds and Father testified that he was in jail because he had broken his step-son's bone.

29. The Court finds and Father testified that his incarceration for his step-son's broken bone started before [K.L.] was born and overlapped over [K.L.'s] entire life.

30. The Court finds and Father testified that he has not used drugs for the last four (4) years and six (6) months he has been in jail.

31. While incarcerated, Father took classes, including anger management classes and parenting classes by correspondence.

….

33. The DCS Family Case Manger, Beth Garretson, maintained minimum contact with the Father because of his incarceration.

34. Father had struggled for several years with profound mental health problems.

35. The Court finds and Father admitted being diagnosed with paranoid schizophrenia and depression.

36. On or about February 2011, Father hanged himself at the mental health facility.

37. On or about February 2011, Father attempted to yank his eyes out at the mental health facility.

38. On or about February 2011, Father set himself on fire at the mental health facility.

39. Father is currently on medication for his mental illness.

40. The Court finds and Father testified that for the last three (3) or four (4) months he has not have [sic] any weird thoughts.

41. Father wants to be in [K.L.'s] life.

….

47. The CASA and DCS Family Case Manager have had a broad opportunity to assess all of the facts and circumstance[s] relevant to

these proceedings. Both testified that termination is in [K.L.'s] best interest.

48. The Court finds and the DCS Family Case Manager testified that given Father's incarceration, lack of contact with [K.L.], his inability to provide for her care, his mental health issues and [K.L.'s] need of stability, the termination of Father's parental rights is in [K.L.'s] best interest.

49. The CASA and DCS Family Case Manager testified regarding the urgency for [K.L.'s] permanency. The Court finds that waiting for Father's uncertain availability to parent severely prejudice[s] [K.L.'s] need for permanency and stability.

50. The Court finds and the DCS Family Case Manager testified that Father's additional time to be released from jail and to try to remedy the condition of removal would only necessitate the child being put on the shelf instead of providing paramount permanency and stability.

51. DCS's plan for the care and treatment of the child should the court grant a termination is adoption.

….

53. [K.L.] is currently placed in a concurrent foster home with another sibling.

54. [K.L.] is bonded with her current adoptive placement.

55. Father's parents, who were considered for a placement, agreed that placement in foster care with one of her sibling[s] is in [K.L.'s] best interest.

Appellant's App. at 9-12. The trial court concluded in part as follows:

6. There is [a] reasonable probability that the conditions that resulted in the removal of [K.L.] and her placement outside of her parent's home will not be remedied.

7. Continuation of the parent-child relationship poses a threat to [K.L.'s] well-being.

7

8. Father's criminal history threatens [K.L.'s] well-being.

9. It is in [K.L.'s] best interests that the parental rights of Father be terminated.

*Id.* at 12.

Father now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Father claims that the evidence is insufficient to support the termination of his parental relationship with K.L. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we apply a two-tiered standard of review. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous where the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.* In conducting our review, we neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

In *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143 (Ind. 2005), our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We

8

recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id.* at 147 (citations, quotation marks, and alteration omitted). In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.*

To obtain a termination of the parent-child relationship between Father and K.L., DCS was required to establish:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

9

> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and

> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

## I. Threat to Child's Well-Being

Father challenges the trial court's findings and conclusion that there is a reasonable probability that the continuation of his relationship with K.L. poses a threat to K.L.'s well-being.[1] "[T]he trial court should judge a parent's fitness to care for his children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The permanent nature of termination necessitates an evaluation of the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation. *Id.* For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle

---

[1] Father also challenges the trial court's findings and conclusion that a reasonable probability exists that the conditions that led to K.L.'s removal will not be remedied. Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive; thus, DCS was not required to prove both. Nevertheless, we note that Father's probation conditions prohibit him from being alone with any child under age sixteen. As such, he is legally prohibited from being alone with K.L., who is not yet five. Father asserts that he will file a post-conviction petition to attempt to eliminate that condition, but he has not yet achieved such a result.

such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

Since K.L.'s birth, Father has been incarcerated for a felony neglect conviction that involved breaking the bone of one of his stepchildren, and one of the conditions of his probation prohibits private interaction with any child under the age of sixteen. Father also has a 2005 conviction for battery by body waste. Moreover, he has no job or housing lined up following his release from prison and has other children for whom he has failed to pay child support. Finally, he suffers from mental illness and has attempted to kill himself by hanging and by fire and to maim himself by pulling out his own eyes. His pattern of conduct demonstrates that he poses a threat to his *own* well-being, in addition to the well-being of others placed in his charge.[2] Consequently, we conclude that the evidence supports the findings and that the findings support the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to K.L.'s well-being.

## II. Best Interests of Child

Father also challenges the trial court's findings and conclusion that termination is in K.L.'s best interests. A determination of the best interests of the child should not be based merely on the factors identified by DCS, but instead should be based on the totality of the circumstances. *Lang v. Starke Cnty. Office of Family & Children*, 861 N. E.2d 366, 373 (Ind.

---

[2] We are mindful that Father has recently taken medication to control his mental illness. However, we must also consider the nature and severity of his conduct when not properly medicated.

Ct. App. 2007), *trans. denied*. A parent's historical as well as current inability to provide a suitable environment for his child supports a finding that termination of his parental rights is in the child's best interests. *Id*.

Here, Father has been incarcerated since K.L.'s birth and has never met her. As of the termination hearing, he had no firm plans for housing or employment upon his expected February 2012 release from prison and stated that he expected to go to an inpatient facility for another ninety days following his release. In addition, Father had not filed a petition for post-conviction relief from the order that would prohibit him from even being in K.L.'s presence in an unsupervised setting. Meanwhile, K.L. is in a stable foster placement with one of her siblings, with a permanency plan of adoption. Both the CASA and the DCS caseworker testified that it is in K.L.'s best interests for her relationship with Father to be terminated.

Finally, we are mindful of the seriousness and permanency of a termination order and emphasize that a termination of parental rights is not intended to punish the parent, but to protect the child. *Lang*, 861 N.E.2d at 371. In this vein, we note Father's laudable efforts during his incarceration in taking parenting skills and anger management classes, as well as taking his medication and using his meager earnings to contribute to K.L.'s support. However, his past criminal conduct and mental health issues have produced current circumstances that constitute not only a legal barrier, but also a practical barrier to his healthy parenting of K.L. As a result, we conclude that the record supports the trial court's conclusion that termination is in K.L.'s best interests. Accordingly, we affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.